Harold R. Horn v. Commissioner.
Horn v. Commissioner
Docket No. 4934.
United States Tax Court
1945 Tax Ct. Memo LEXIS 18; 4 T.C.M. (CCH) 1093; T.C.M. (RIA) 45367; December 12, 1945
*18 E. B. Graham, Esq., Citizens Nat. Bank Bldg., Zanesville, Ohio, and Clarence G. Rausch, C.P.A., 510 Metropolitan Bldg., Akron, Ohio, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding involves a deficiency of $5,171 in petitioner's income tax for 1940. The question presented is whether the petitioner is liable to income tax upon $12,782.38, representing a portion of the proceeds from slot machines which petitioner remitted to officials of the state promotional organization of the Fraternal Order of Eagles in whose lodge rooms the slot machines were operated. Findings of Fact Petitioner is a resident of Akron, Ohio. He filed his return for 1940 with the collector of internal revenue for the eighteenth district of Ohio. For several years prior to 1940 petitioner was employed by E. C. Ellery whose business was operating slot machines in the club rooms of the various lodges of the Fraternal Order of Eagles in the States of Ohio, Kentucky and West Virginia. Ellery operated under a written agreement with the Ohio Organization Department of the Fraternal Order of Eagles. *19 The Ohio Organization Department, hereinafter referred to as the Ohio Organization, was independently owned and operated by M. L. Brown, organizer of the Fraternal Order of Eagles in the States of Ohio, Kentucky, and West Virginia. Its activities were essentially promotional. Its chief function is to organize new lodges, or "aeries" as they are called, to increase membership in the national organization, and to regulate and coordinate the activities of the various aeries. It was "chartered" to do such promotional work by the national organization. It had no written contracts with the individual aeries. It employee duditors and field representatives who visited the various lodges from time to time to audit their accounts and assist them in their business and social affairs. The slot machines were its principal source of income and it was therefore interested in establishing as many aeries, and having as many slot machines installed, as possible. For 1940 the Ohio Organization filed a partnership return on form 1065 showing income of $98,837.22, distributable in equal shares to M. L. Brown, Winifred M. Brown, and M. M. Brown "All of 23 South Center Street, Springfield, O." The return *20 showed a total income of $199,654.64 of which $142,972.16 was slot machine proceeds. The Ohio Organization had no direct power or control over the aeries or the individual members thereof but acted in an advisory capacity. Ellery entered into a written agreement with the Ohio Organization in 1933 which provided that he would install and operate slot machines in the various club rooms of the lodges as directed by the Ohio Organization, and that the local aeries "shall receive" 75 percent of the proceeds therefrom, Ellery 20 percent, and the Ohio Organization 5 percent. The original agreement was later amended so that in 1940 the Ohio Organization should receive 7 1/2 percent and petitioner 17 1/2 percent, and the individual lodges 75 percent of the slot machine proceeds. On his part Ellery agreed to furnish and service the slot machines at his own expense and to pay the cost of all suits and fines that might result from their operation. As of January 1, 1940, petitioner entered into an oral agreement with Ellery, subject to approval by the Ohio Organization, which was obtained, to take over the slot machine business in the States of Kentucky and West Virginia, leaving Ellery the *21 territory of the State of Ohio. Petitioner purchased from Ellery all of the slot machines and other equipment then in use in Kentucky and West Virginia and continued the business just as it had been operated by Ellery. There was no new contract between petitioner and the Ohio Organization. Petitioner had several employees whose duties were to service the slot machines and collect the coins. They worked on a commission basis. Collections were made usually about once a week and always in the presence of one or more of the officials of the lodge. These officials would assist in counting the money and sign duplicate statements with petitioner or his collectors of the amounts collected. The lodge officials would retain their 75 percent and the collectors would forward the balance to petitioner, after taking out their commissions. Each collector would fill out a monthly report in triplicate on forms furnished by the Ohio Organization. The form contained a number of general questions about the affairs of the aeries visited, particularly with respect to matters that might affect the amount of the proceeds from the slot machines. Petitioner would make weekly remittances to the Ohio Organization *22 of its share, 7 1/2 percent of the gross collections, from the slot machines which he operated. The amount so remitted to the Ohio Organization in 1940 was $12,782.38. Petitioner deducted that amount in his income tax return for that year as an ordinary and necessary business expense. The respondent disallowed the deduction, thus increasing petitioner's reported income of $30,697.01 to $43,479.39. The operation of slot machines for gain was unlawful in the States of Kentucky and West Virginia in 1940. Opinion The facts in this case in all material respects are like those in Horace Mill, 5 T.C. 691, promulgated September 11, 1945. There the taxpayer operated slot machines in the club rooms of the Loyal Order of Moose in the State of Ohio in substantially the same manner as this petitioner operated them in club rooms of the Fraternal Order of Eagles in the States of Kentucky and West Virginia. Under the agreement between the parties 5 percent of the slot machine proceeds was received by the Ohio State Moose Association, which corresponds to the Ohio Organization in this case. We held that that portion of the proceeds was not the taxpayer's income and could not be taxed *23 to him. We think that our decision in that case is dispositive of the question in this case. The $12,782.38 here in question belonged to Brown and was received by petitioner to be paid over to him. We therefore determine on authority of Horace Mill, supra, that the respondent erred in including the disputed amount of $12,782.38 in petitioner's income for 1940. Decision of no deficiency will be entered.